**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| DYLAN BURGESS, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>RAB, INC.,<br><br>      Defendant. | Case No. 3:23-cv-02845-L |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
RAB, INC.'S MOTION TO DISMISS**

## I. INTRODUCTION

Defendant RAB Inc., (RAB or Defendant)'s motion to dismiss must be denied because the Plaintiff has pled sufficient facts to demonstrate the applicability of the debt as a consumer debt to which the FDCPA's requirements apply. The Plaintiff has pled, and this Court must accept as true, Plaintiff's pleading that he was a consumer and that the alleged obligation was one arising out of a "personal lending transaction." At the pleadings stage, such statements are sufficient to meet the Plaintiff's pleading requirements that the debt is a "consumer" debt.

Defendant's attempt to marshal extrinsic evidence in support of its motion to dismiss must fare no better because this Court is not permitted to consider such evidence at the motion to dismiss stage. But even if it did, the extrinsic evidence provided in the form of an agreement *Mr. Burgess* is alleged to have signed has other infirmities, together with other representations made to Mr. Burgess, which show that the purported obligation is a purported consumer obligation subject to the FDCPA. As so many other courts have done in other FDCPA cases where the nature of the transaction is disputed, this case should be allowed to proceed to discovery.

## II. BACKGROUND

The original complaint in this matter was filed on December 22, 2023 against the moving Defendant RAB. (ECF No. 1). After various procedural infirmities, Defendant filed its instant motion to dismiss on February 1, 2024. (ECF No. 17). In it, the Defendant takes the position that there is no consumer debt and that the FDCPA does not apply. To support this conclusion, Defendant impermissibly attempts to introduce extrinsic evidence beyond the four corners of the complaint. This response follows.

1

### III.    LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010) (cleaned up). The requirement that a plaintiff "show" that he is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### IV.    ARGUMENT

A.   *The four corners of Plaintiff's complaint are plainly sufficient to state a claim under the FDCPA.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged that the alleged obligation at issue is a consumer debt, as opposed to a business debt. He has done so because he has pled facts which give rise to this fact with sufficient specificity to nudge those claims from probable to plausible. *See id.* at 570.

2

Specifically, the plaintiff has pled multiple facts which support the Plaintiff's contention that the alleged underlying obligation was a debt because it was an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Plaintiff has clearly met this standard, as will be explained below. Moreover, the Plaintiff does more than simply allege that the debt is a consumer debt. Rather, he pleads facts to support this contention.

But first, Defendant miscites to authority in support of its contention that the Plaintiff is required to make any additional allegations that the debt is a "consumer" debt at the pleadings stage. To begin with, the case cited only as "*Hall*" does not exist. The actual cite for "642 F. App'x at 406" is a case called *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 F. App'x 406 (5th Cir. 2016), dealing with Wisconsin franchise law, not the FDCPA. Similarly, that case's alleged citation to *Goldman v. Cohen*, which also does not exist, likewise does not support the Defendant's position. The Sixth Circuit's 2006 holding in *Goldman*, which was superseded by later changes to the FDCPA, dealt only at summary judgment with whether a debt collector's lawsuit in state court seeking recovery of a debt was an "initial communication" within the FDCPA's text. 445 F.3d 152, 154 n.1 (2d Cir. 2006). It says nothing about the pleadings required to demonstrate a consumer debt and merely states the unremarkable proposition that "commercial debts are not covered by the protective provisions of the FDCPA." *Id.*

The Plaintiff now addresses the facts present within the four corners of his complaint giving rise to his FDCPA claim with respect to why the debt is a consumer debt. To begin with, the Plaintiff states that the debt arise "out of a personal lending transaction." (Compl. ¶ 16).

What's more, the violative communications complained of, were sent to "twenty-six different email addresses," including the Plaintiff's personal email address, as well as emails belonging to "friends, family, and coworkers." (Compl. ¶ 18, 19). And the Plaintiff alleges that the emails were sent to diminish "Mr. Burgess' standing," not that of any commercial enterprise in which Plaintiff was involved. (Compl. ¶ 20). Furthermore, in an implicit concession that the email was sent in an attempt to collect a debt owed for personal, non-business purposes, the subject line contained a fictious court case (as seems to be the norm with Defendant) of "*eCommissions vs. Dylan Burgess*." (Compl. ¶ 22).

And the text of the message RAB chose to use further supports the Plaintiff's contention at the pleadings stage that the debt is a consumer debt, not a business debt. If the debt was a business debt, what basis would RAB have to "force [Mr. Burgess] to deal with" it? (Compl. ¶ 23). What basis would it have for a lawsuit against Mr. Burgess but not the business allegedly obligated thereunder? (*Id.*). What power would it have to "render a decision on [Mr. Burgess'] behalf"? (*Id.*). In sum, the Plaintiff's allegations that the debt was a consumer debt arising out of a "personal lending transaction," (Compl. ¶ 16), coupled with the nature and content of the FDCPA-violative communications themselves, can permit this Court to draw the inference that the debt was a consumer debt subject to the FDCPA and not a business one. To be sure, the Plaintiff will need to demonstrate as much at trial. But the Defendant cannot simply "pick off" the Plaintiff at the motion to dismiss stage based on its attempt to mischaracterize and convince the court that the debt is not a consumer debt.

The Northern District of Mississippi's decision in *Moore v. Principal Credit Corp.* is particularly illustrative. No. 4:96CV338-S-B, 1998 WL 378387, at *1 (N.D. Miss. Mar. 31, 1998). There, this Court lying in our same Fifth Circuit refused to dismiss an FDCPA action at

4

the motion to dismiss stage. The plaintiff in that case, the owner of a grocery store, had purchased computer programs from a vendor and later received, like here, threatening and harassing communications from the defendant in an attempt to collect monies owed for such computer programs. *Id.* at *2. There, the Court held that the defendant's action in addressing letters to "PJ Meat Co., Attention: James Moore" and calling the plaintiff and his minor son at their home, led to the inference that "at the very least that the plaintiffs were ultimately responsible for the debt. If the plaintiffs were not "consumers" at the time of purchase, then certainly they became "consumers" for purposes of the Act once the telephone calls to their home began." *Id.* So too here. Just like in *Moore*, the Plaintiff here received harassing and illegal communications directed to the Plaintiff's personal acquaintances and named the Plaintiff personally in all communications, not even mentioning any company, or even the broker also purportedly allegedly obligated thereunder, at all. (Compl. ¶ 19, 22).

The other authorities cited by the Defendant are unpersuasive because they all had the benefit of a completely developed record. For example, the Eastern District of Pennsylvania in *Matin v. Fulton, Friedman & Gullace LLP* held that a consumer failed to adequately present evidence of the nature of the debt as *either* commercial *or* residential and accordingly granted summary judgment on the issue. 826 F. Supp. 2d 808, 813 (E.D. Pa. 2011). Similarly, the Western District of New York in *Powers v. Kearns, Brinen & Monaghan, Inc.*, determined at summary judgment, with the benefit of a fully-developed factual record, that the debt was commercial in nature because the transaction was a *business cash advance* made in exchange for a commercial purchase of a percentage of future *receivables* from a business. No. 15-CV-187-JTC, 2015 WL 8678378, at *2 (W.D.N.Y. Dec. 11, 2015). There, Court also cited to cases that noted that, unlike here, the applicant *applied as a business*. *Id.* (citing *Anderson v. Granoff,*

5

*Walker & Forlenza, P.C.*, No. 11 CIV. 4178 DAB, 2012 WL 1066801, at *4 (S.D.N.Y. Mar. 27, 2012) ("Bruchim applied for the loan as a business.")).

Ultimately, the very issue of the nature of the alleged debt will be a genuinely disputed material fact reserved for the jury. *Clark v. Brumbaugh & Quandahl, P.C., LLO*, 731 F. Supp. 2d 915, 921 (D. Neb. 2010). Courts have also had no trouble calling out attempts at mischaracterizing debts when they see them. For example, the Middle District of Florida held that characterizing consumer debts as "recoverable corporate advances," in an effort to sidestep the FDCPA's restrictions by characterizing a debt as commercial is *itself* an FDCPA violation. *See, e.g., Meyer v. Fay Servicing, LLC*, 385 F. Supp. 3d 1235, 1245 (M.D. Fla. 2019). Indeed, the Seventh Circuit has pointed out that "it is unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgeably assess the validity of the debt." *Fields v. Wilber L. Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004). Because the Plaintiff has plead facts at the pleadings stage which support his contention that the debt is a personal debt, or at the very least that he may succeed in characterizing it as such, this case must be permitted to proceed.

B.  *It's inappropriate for this Court to consider extrinsic evidence offered by the Defendant at the Motion to Dismiss stage. Even if it did, such evidence does not help the Defendant because it does not definitively establish that the debt is not a consumer debt.*

"[W]hen non-pleading materials are filed with a motion to dismiss . . . a district court has complete discretion under the Federal Rules of Civil Procedure to either accept the exhibits submitted or not, as it sees fit." *Isquith for & on Behalf of Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988). In determining whether it is an abuse of discretion to consider materials attached to a motion to dismiss, a court must consider whether the attached documents are referenced in the complaint, whether the Plaintiff had an opportunity to respond to such

6

materials, and the extent to which such materials would permit disposition of the case under the Rule 56 standard for summary judgment. *See id.* at 195–97. If these threshold requirements are met, a court *may* convert a motion to dismiss into one for summary judgment. *See Harris v. Progressive Ins., Inc.*, No. 3:13-CV-3983-K, 2014 WL 712446, at *4 (N.D. Tex. Feb. 24, 2014).

As explained above, however, even taking the purported agreement attached to the Defendant's motion as true, such a document isn't dispositive as to the Defendant's contention that the debt is a commercial, non-consumer debt. To begin with, the document which Defendant produces at Exhibit B is incomplete and only consists of two pages, both listed page "2 of 2." Thus, the Court has not been presented even the complete agreement for it to consider. Setting aside this infirmity for a moment, the mere fact that the agreement contains a clause stating that "no portion of such proceeds to be used for any personal, family or household purposes," is not dispositive at the summary judgment, let alone the pleadings, stage. For example, in *Slenk v. Transworld Sys., Inc.*, the Ninth Circuit held that in determining whether a loan is consumer or commercial in nature, it would "look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone." 236 F.3d 1072, 1075 (9th Cir. 2001).

The Plaintiff's intent and the nature of the obligation matters, and evidence as to the Plaintiff's intent and such obligation can only be ascertained through discovery. In *Clark*, for example, the plaintiff testified that she used her commercial credit card account for personal, family, or household purposes. 731 F.Supp.2d at 921. The court found that "[a]lthough [the defendant] is correct in its contention that the Account was opened . . . ostensibly for commercial purposes, the [proper] focus [is] on the *nature of the debt* that was incurred, and *not the purpose* for which the Account was opened." *Id.* at 922. In sum, the plaintiff has pled that the nature of the debt here was personal. More specifically, and as the limited documentation presented by the

7

Defendant makes clear, the Plaintiff believed that he was receiving an advance on his salary and commission as a real estate broker. Like any such normal payment made by a broker to an agent as a commission, once paid, Mr. Burgess would have the right to use such funds as he sees fit, including for his own personal, family, and household purposes.

"Courts have looked to the substance of transactions to determine whether they fall under the ambit of consumer protection statutes." *Perk v. Worden*, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007). To that end, to determine whether a debt is commercial or personal in nature, a court must examine the transaction *as a whole* and pay particular attention to the purpose for which credit was extended. While the agreement may be relevant in such regard, it isn't the only piece of evidence this court can, or even should, use, in making that determination.

The three citations made by the Defendant on this point are therefore distinguishable. In *Grp. One Dev., Inc. v. Bank of Lake Mills*, No. CV H-17-0375, 2017 WL 2937709, at *3 (S.D. Tex. July 7, 2017), a *corporate* debtor, not an individual (as here), was plainly held to have entered into a business loan agreement when (unlike here), the Plaintiffs made *no allegations* that the "transaction at issue was primarily for personal, family, or household purposes." Similarly, in *Kattula v. Jade*, No. 07-12569, 2008 WL 495298, at *7 (E.D. Mich. Feb. 20, 2008), the Court determined on a motion to dismiss that a $1.25 million loan to purchase a truck stop could in no way be characterized as one for "personal, family, or household purposes," nor did any part of the complaint make such a characterization. And the Third Circuit's unpublished *per curiam* decision in *Dixon v. Golden-Masano-Bradley, L. Firm*, 228 F. App'x 142, 143 (3d Cir. 2007), is little-reasoned. However, it appears that the plaintiff in that case, who had access to over 500 pages of additional discovery, was unable to overcome a promissory note's language,

particularly when he admittedly breached the note's terms. *Id.* at 143–44. No such allegations appear here, where the Plaintiff is only part of the contract "as a financial accommodation."

What *is* evident, however, and what will be developed and proved through discovery, is that the agreement, which was between "JP & Associates Realtors" and "eCommission Financial Services, Inc.," was for a purchase of an account receivable. Mr. Burgess was only paid as part of a "financial accommodation" and incurred no liability *per the express terms of the agreement*. Thus, as a preliminary matter, Mr. Burgess cannot be said to have incurred any debt for commercial purposes, particularly as it was a commission payment. What's more, any attempted characterization of the alleged debt in the agreement is irrelevant, particularly as Defendant sent the email to Mr. Burgess; family and friends, thus implicitly admitting that any such involvement with respect to Mr. Burgess was incurred for personal, family, and household purposes.

Furthermore, the language in the agreement is not dispositive because it is full of contradictory statements. For example, the agreement explicitly states that it is "not a secured transaction." This Court can take judicial notice of the fact that eCommission nevertheless improperly filed a UCC lien against Mr. Burgess. Texas UCC File No. 00230031947453 (July 21, 2023). In fact, it appears there is no *actual* debt at all with respect to either party, further demonstrating that reliance on the agreement alone is improper. Instead, the only obligation is an *alleged* obligation of the sale and purchase of an *anticipated* account receivable with the right to collect the account receivable. It follows that if the account receivable is never paid, there is no obligation, only a *potential* obligation. Therefore, eCommission and by extension Defendant would only obtain the right to collect the account receivable from, if anyone, the broker or the original payor of the account receivable, if it ever materialized. Indeed, eCommission admits as much on its website stating it bears the risk of loss of a deal falling through.

9

Ultimately, even if this Court were to convert Defendant's motion into one for summary judgment, sole reliance on two pages of a four page agreement proffered by the Defendant is improper. Genuinely disputed material facts exist as to the nature and character of the debt, particularly because there is no clear obligation entered into for commercial purposes between Mr. Burgess and eCommissions, unlike in the other cases which were clearly commercial and entered into as between sophisticated corporate entities.

By contrast, this case poses multiple questions with respect to whether any obligation or alleged obligation was commercial, including the issues of (1) whether the obligation is even an obligation with respect to Mr. Burgess at all, or merely an alleged obligation, (2) Mr. Burgess' contention that his alleged obligation was incurred for his personal use, including because he owes nothing and it was an advance of a commission payment, and (3) whether or not the transaction was commercial in that it was, by its very terms, not a secured transaction but rather a purchase of a potential account receivable from another individual entirely for which eCommission bore the risk of loss. Mr. Burgess also contends that he was duped into thinking that Defendant was attempting to collect a legitimate obligation it contended was owed by him and which he incurred for personal, family, and household reasons. Defendant cannot act as if the obligation was incurred for personal, family, and household reasons when collecting a debt but then pivot and claim the debt is commercial when called out on its practices for collecting it.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies or permit discovery as to the issue of the nature of the debt and reserve other determinations properly the subject of the jury.

Dated: March 4, 2024

/s/ Andrew Roman Perrong
Andrew Roman Perrong (N.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*Attorney for Plaintiff and the Class*

### CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

March 4, 2024

/s/ Andrew Roman Perrong
Andrew Roman Perrong (N.D. Tex. # 333687PA)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com


*Attorney for Plaintiff and the Class*