UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYLAN BURGESS, individually and on behalf of all others similarly situated,<br>   *Plaintiff,*<br><br>v.<br><br>RAB, INC.,<br>   *Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 3:23-cv-02845-L |

**DEFENDANT RAB, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

COMES NOW, Defendant RAB, Inc. ("Defendant") and files this Reply in Support of its Motion to Dismiss as follows:

**INTRODUCTION**

1. Plaintiff filed suit against Defendant on December 22, 2023, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). Doc. 1. Plaintiff alleges Defendant violated sections 1692c, 1692e, and 1692g of the FDCPA in its communications with Plaintiff and others. *Id*. at 10-11. The FDCPA concerns the collection of consumer debts, defined by the FDCPA as debts which are "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The debt in this matter is *commercial* debt, not a consumer debt, and thus Plaintiff's Complaint fails as a matter of law.

2. Defendant moved to dismiss this matter on February 1, 2024. Doc. 17. Plaintiff filed his Response on March 4, 2024, and Defendant now files this Reply. Doc. 21. As shown in Defendant's Motion to Dsimiss, the Agreement creating the debt stated it was "for business purposes only, with no portion of such proceeds to be used for any personal, family or household purposes." Doc. 17-1. As the money was loaned right then and there and pursuant to those express terms, the debt is inherently commercial in nature, and therefore Plaintiff's FDCPA claims fail as a matter of law.

Plaintiff has not presented any argument or evidence that shows the debt is not commercial in nature, and therefore Defendant's Motion to Dismiss should be granted on these grounds, and all claims against Defendant dismissed with prejudice.

## ARGUMENTS AND AUTHORITIES

### A. The Court can consider the contract attached by Defendant

3. Plaintiff argues that this Court should not consider the contract presented by Defendant for several reasons. First, Plaintiff argues the Court should not consider it because it is not a part of Plaintiff's Complaint. However, as Plaintiff admits, the Court has discretion to consider the contract at this time, and other federal courts in Texas have considered contracts attached to Motion to Dismiss, such as in *Martin Res. Mgmt. Corp. v. Fed. Ins. Corp*, which stated:

> Ordinarily, the court is limited in its analysis to the contents of the complaint and its attachments. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (explaining that, in a 12(b)(6) analysis, the court would not normally be permitted to review a contract unless included with the complaint). But when a defendant attaches a contract to its motion to dismiss, the contract is referenced in the complaint, and the contract is central to plaintiff's claims, the court should consider it when addressing a motion to dismiss. *Id.*; *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Here, defendant attached the Executive Portfolio Protection Policy to its motion to dismiss (Doc. 11, Ex. C), this policy is referenced in the complaint, and it is central to plaintiff's claims. Therefore, the court will consider the policy in analyzing defendant's motion.

No. 6:20-cv-00083, 2020 U.S. Dist. LEXIS 140858, at *2-3 (E.D. Tex. Aug. 6, 2020). In this matter, the contract underlying the debt is referenced in the complaint, although indirectly, is central to the claims raised in the Complaint, is a key issue in this case, and this issue can be decided at this stage based on the information before the Court. Further, "[w]here the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-

P, 1997 U.S. Dist. LEXIS 20364, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) (*citing Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *accord Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974). Therefore, the Court should consider the contract in concluding the debt is commercial in nature, and disregard Plaintiff's baseless and conclusory statements otherwise. Plaintiff has not presented any valid grounds to not considered the Advance Agreement, his objections to the documents are not based on any case law, and Plaintiff never claims he did not agree to the contract or its terms or receive the money as a result of the contract. Plaintiff takes issue with certain provisions of the Advance Agreement, especially concerning the UCC Financing Statements, but that is immaterial to the fact that the Advance Agreement clearly stated that any monies received from the Advance Agreement would be "for business purposes only, with no portion of such proceeds to be used for any personal, family or household purposes." Doc. 17-1. The Court should consider the Advance Agreement, and use it to determine the debt was commercial in nature and not subject to the FDCPA.

### B. The debt is inherently commercial in nature.

4.  Plaintiff presents contradictory accounts of the debt at issue. First, Plaintiff claims he "was receiving an advance on his salary and commission as a real estate broker." Doc. 21 at 9. He also describes it as a "commission payment." *Id*. at 10. He also claims he was "only paid as part of a 'financial accommodation' and incurred no liability per the express terms of the agreement." *Id*. Plaintiff then goes on to claim there is no debt at all, actually:

> In fact, it appears there is no actual debt at all with respect to either party, further demonstrating that reliance on the agreement alone is improper. Instead, the only obligation is an alleged obligation of the sale and purchase of an anticipated account receivable with the right to collect the account receivable. It follows that if the account receivable is never paid, there is no obligation, only a potential obligation.

Doc. 21 at 10. Plaintiff also describes the debt as "an alleged obligation of the sale and purchase of an anticipated account receivable with the right to collect the account receivable." *Id.* That is hardly how one described a consumer debt, and most consumer debts do not involve selling anticipated accounts receivable. The facts show the debt is commercial in nature, as it the "the sale and purchase of an anticipated account receivable," which is an inherently commercial activity.

5.  In a normal FDCPA suit, courts usually look to the ostensible purpose for which the obligation was entered into, but consider the funds' actual use paramount. *Nicolaides v. Divine & Serv.*, 382 F. Supp. 3d 251, 256 (E.D.N.Y. 2019). However, as a court in Eastern District of New York recently addressed, in the context of claims involving commercial accounts, it is "hard to imagine that Congress intended creditors and debt collectors to scour commercial accounts for any whiff of misuse. Such an approach would permit cardholders who flaunt their corporate credit card agreements to benefit from their fraud under a consumer-protection statute." *Id.* at 257. The court stated:

> **In the case of a loan, the moment the loan is issued and the moment the debt is incurred are one and the same.** In that scenario, the creditor is "likely to know whether the debt was personal or commercial." *Miller*, 214 F.3d at 875. A credit card transaction is slightly different: No money is owed at the moment the account is opened.
>
> [. . .]
>
> **"What matters in the context of an FDCPA claim is the asserted basis for the obligation to pay." *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015) (quotation marks omitted). Key to that obligation is the relationship between the creditor and the debtor. Thus, courts regularly examine the terms of the credit agreement to evaluate the nature of a transaction. *See Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 884 n.7 (11th Cir. 2010) (affirming district court's ruling that "debt was a 'consumer' debt because it was related to a . . . credit card in [the debtor's] name, connected to his home address, and not used for business"); *Powers v. Kearns, Brinen & Monaghan, Inc.*, 2015 U.S. Dist. LEXIS 166420, 2015 WL 8678378, at \*3-4 (W.D.N.Y. Dec. 11, 2015) ("[P]laintiff's undisclosed motivations in securing the cash advance and her later use of the money [for personal expenditures] in breach of the**

> **[agreement] are insufficient to transform this transaction from a commercial sale agreement to a personal loan.");** *Ross v. Panteris & Panteris, LLP*, 2013 U.S. Dist. LEXIS 151399, 2013 WL 5739145, at *10-11 (D.N.J. Oct. 22, 2013) **(relying on business credit card agreement to hold debt was commercial in nature).** And at least one district court has declined to extend the FDCPA to corporate credit card debts altogether. *See Vasilakos v. Blitt & Gaines*, P.C., 2013 U.S. Dist. LEXIS 112228, 2013 WL 4047634, at *3 (N.D. Ill. Aug. 8, 2013).
>
> **This approach makes sense because the promise to use a corporate credit card only for business purposes is an ex ante expression of the cardholder's intent.** Courts regularly hold parties to the intent manifested in a written agreement to "ensure some measure of stability in commercial relations" and to "avoid the possibility that fraud might be perpetrated if testimony as to subjective intent could be substituted for the plain meaning of a contract." *See Garza v. Marine Transp. Lines, Inc*., 861 F.2d 23, 26 (2d Cir. 1988). In evaluating a credit card transaction, the cardholder's intent behind specific purchases must therefore be subordinated to a contrary purpose articulated in the credit agreement. **That is, the creditor or debt collector is justified in relying on the debtor's express contractual representation of the account's purpose. This better comports with the purpose of the FDCPA, limits uncertainty, and avoids unfairness**.

*Nicolaides*, 382 F. Supp. 3d at 257-58 ("extending the FDCPA to protect businesspeople sophisticated enough to obtain a corporate credit card, promise that it will not be put to personal use, and then immediately violate that promise, condones conduct that borders on fraud and is a far cry from the statute's goal") (emphasis added).

6. In this matter, Plaintiff signed the agreement and received the funds based on a future agreement to repay the funds. Doc. 17-2. The debt is most akin to a loan than a credit card due, considering it was an "alleged obligation of the sale and purchase of an anticipated account receivable with the right to collect the account receivable." Doc. 21 at 10. Thus, the Court should examine the nature of the underlying credit agreement, the relationship between Plaintiff and the original creditor, and the specific representations made in the credit agreement that the debt would be commercial in nature and not personal. Doc. 17-2; *Nicolaides*, 382 F. Supp. 3d at 257-58.

7. The debt was incurred as a result of an Advance Agreement related to commercial activity engaged in by Plaintiff. *Id*. Further, Plaintiff warranted that he intended to use the funds for

business purposes only. *Id*. The Advance Agreement also stated "[t]he Purchased Commission is to be repaid therefore, using commissions earned from [Plaintiff's] next sale . . . ." *Id*. The nature and substance of the transaction which lead to the debt was commercial in nature, as it was made to be used for business purposes only, was predicated on Plaintiff's commercial activity, and was intended to be repaid based on Plaintiff's commercial and business activity. Thus, the debt cannot be consumer in nature, and the FDCPA does not apply.

8.  Plaintiff's arguments that he has pleaded enough to establish a consumer debt at this stage of the litigation are incorrect. Doc. 21. First, plaintiff claims that he has plead enough because his Complaint "states that the debt arise 'out of a personal lending transaction.'" *Id*. at 4-5. However, as multiple courts have held, "[w]here the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez*, 1997 WL 786250, at *2. Next, Plaintiff complains of Defendant's alleged conduct, claiming that the violative communications complained of were sent to "twenty-six different email addresses," including the Plaintiff's personal email address, as well as emails belonging to "friends, family, and coworkers" and that there cannot be a commercial debt because the letters were "sent to diminish Mr. Burgess' standing." Doc. 21 at 5. Even if these allegations were true, it does not matter. Multiple courts have held that "[a] debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of the obligation itself." *Matin v. Fulton, Friedman & Gullace, LLP*, 826 F. Supp. 2d 808, 812 (E.D. Pa. 2011) (internal quotations omitted) (citing cases). Such actions do not transform a commercial debt into a consumer debt, as a debt collector's treatment of an obligation is irrelevant to an inquiry regarding the nature of that obligation itself. *See id.*; *Slenk v. Transworld Systems, Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001) ("We, too, refuse to ignore Congress's intent by defining a consumer debt in accordance with the

actions of the debt collector, rather than the true nature of the debt."). How Defendant treated the debt, who Defendant allegedly contacted, or why Defendant allegedly contacted Plaintiff has no bearing on the nature of the obligation, which was determined long before Defendant ever got involved. Defendant never "implicitly admit[ed]" the debt was personal in nature, as Plaintiff claims, and Plaintiff repeatedly focuses on the wrong issues to try and argue the debt is consumer in nature, as opposed to the clear terms and intent of the agreement to be a commercial loan. <u>Doc. 21</u>. Multiple courts have held that how a debt is treated is irrelevant to an inquiry regarding the nature of that obligation itself. *Matin*, 826 F. Supp. 2d at 812.

9.      Finally, Plaintiff claims it is a consumer debt because "Plaintiff believed that he was receiving an advance on his salary and commission as a real estate broker" and "[l]ike any such normal payment made by a broker to an agent as a commission, once paid, Mr. Burgess would have the right to use such funds as he sees fit, including for his own personal, family, and household purposes." *Id.* at 9. This argument, that Plaintiff can sign an agreement that says one thing, and then use the funds for whatever purpose he wants regardless of the agreement, and that governs the nature of the debt, is the exact argument rejected in *Nicolaides*. 382 F. Supp. 3d at 257-58 ("extending the FDCPA to protect businesspeople sophisticated enough to obtain a corporate credit card, promise that it will not be put to personal use, and then immediately violate that promise, condones conduct that borders on fraud and is a far cry from the statute's goal").

10.     Even then, Plaintiff's claim misstates the relevant law. While courts tend to look to the nature of the use of funds in credit cards cases, they examine it differently in the context of loans, which this case is more akin to. As the Court in *Nicolaides* held, "the moment the loan is issued and the moment the debt is incurred are one and the same." 382 F. Supp. 3d at 257. Plaintiff became indebted when he agreed to the Advance Agreement, regardless of what he later used the funds for.

Thus, under the terms of the Advance Agreement, the debt is commercial in nature, the moment it was issued and the moment the debt was incurred is the same, and from the moment it was issued and incurred it was a commercial debt. Doc. 17-2.

11. Further, if Plaintiff's allegation that he is not obligated on the debt is true, and rather eCommission or the broker is obligated, then how Plaintiff spent the funds is immaterial, the only evidence of the debt would be the Agreement, and the only evidence regarding the nature of the debt would be the Agreement stating the debt is commercial in nature. If the loan was incurred so that Plaintiff's employer could provide an advance on his salary, then that is clearly commercial in nature, as it would have been used to pay payroll by Plaintiff's employer.

12. The Advance Agreement creating the debt—which Plaintiff does not argue he never signed or entered into—clearly stated the debt was commercial, intended to be commercial, and that it was violation of the agreement to use the debt for non-commercial purposes. Plaintiff expressly agreed that the debt would be used for commercial purposes only. Courts regularly hold parties to the stated intentions in entering into loan agreements such as this, and this case is no difference.[1] It is clear that the Advance Agreement specifically designated the debt as a commercial debt in order to avoid scenarios like this. Plaintiff apparently flagrantly violated these provisions, and now seeks to blame Defendant for this. Plaintiff's claims fail as a matter of law and should be dismissed.

**C. Plaintiff's statements about the cases cited by Defendant are inaccurate.**

13. Plaintiff claims Defendant "miscites to authority in support of its contention that the Plaintiff is required to make any additional allegations that the debt is a 'consumer' debt at the pleadings stage." Doc. 21 at 4. Plaintiff's entirely argument is inaccurate. First, Defendant does

---

[1] Under Texas law, the primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. In construing a contract under Texas law, courts must examine and consider the entire writing. The terms used in the contract are given their plain, ordinary meaning. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

not argue that "Plaintiff is required to make any additional allegations that the debt is a 'consumer' debt at the pleadings stage." *Id*. The amount that Plaintiff is required to plead about the debt is set by the federal pleadings standards, but Defendant's argument does not revolve around how much Plaintiff has pleaded regarding the debt. Rather, Defendant's argument rests on the agreement creating the debt, which stated it was for "business purposes only, with no portion of such proceeds to be used for any personal, family or household purposes." Doc. 17-2. The Advance Agreement shows the debt was a commercial debt, from its inception through its termination, and was never a consumer debt. Thus, Plaintiff's FDCPA claims fail as a matter of law.

14.  Next, Plaintiff claims "the case cited only as '*Hall*' does not exist." *Id*. The case which allegedly does not exist is *Hall v. Phenix Investigations, Inc.*, 642 F. App'x 402 (5th Cir. 2016), a Fifth Circuit opinion in which the Court found that the FDCPA did not apply to a debt that was commercial in nature. Plaintiff also takes issue with *Goldman v. Cohen*, which was included as part of a parenthetical citation and was not a central issue in Defendant's Motion to Dismiss. Doc. 21 at 4. These cases, both of which exist, show that the FDCPA does not apply to consumer debts, as "the commercial nature of the debt rebuts any conclusory allegation that there was a consumer debt subject to the FDCPA." *Hall*, 642 F. App'x at 406. Plaintiff's arguments regarding these cases are simply inaccurate and should be ignored.

## CONCLUSION

15.  Plaintiff claims he can present evidence showing the consumer nature of the debt, even though Plaintiff has doubts as to whether any debt actually exists. He further claims discovery should be allowed to continue to determine whether the debt is commercial or consumer. However, the law is clear—a plaintiff is not entitled to discovery to cure the defects in his Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under

Rule 8, he is not entitled to discovery, cabined or otherwise"). Plaintiff incurred a loan, which was to be used for commercial purposes only, and Plaintiff agreed to these terms. Plaintiff cannot now claim the debt is consumer in nature when the debt is clearly defined, in the Agreement creating the debt, as being commercial in nature. The debt is commercial in nature and cannot serve as the basis for an FDCPA claim. For these reasons, all of Plaintiff's FDCPA claims fail as a matter of law, and all claims against Defendant should be dismissed with prejudice.

Respectfully submitted,

**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV
Texas State Bar No. 24078928
Email: xmartin@mgl.law
JACOB MICHAEL BACH
Texas State Bar No. 24100919
Email: jbach@mgl.law
**MARTIN GOLDEN LYONS WATTS MORGAN PLLC**
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, Texas 75231
TEL: (214) 346-2630
FAX: (214) 346-2631

***COUNSEL FOR DEFENDANT RAB INC.***

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been forwarded via **CM/ECF** system to all parties entitled to notice of the same on this 14th day of March, 2024.

*/s/ Xerxes Martin*
EUGENE XERXES MARTIN, IV